IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMELIA A. BAXLEY, *et al.*, | ) | CASE NO.  4:04CV1600 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge John M. Manos |
| | ) | |
| DELTA AIR LINES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OF OPINION |

On September 27, 2004, Defendants Delta Air Lines, Inc. ("Delta") and Comair, Inc. ("Comair") filed a Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 8). The parties have fully briefed the issues.

For the following reasons, the motion is GRANTED.

## I. FACTS

The Defendants are affiliated airlines. On August 11, 2002, Amelia Ann Baxley, plaintiff, was a passenger on Delta Flight No. 5484, operated by Comair, from Akron to Cincinnati, Ohio. From there, she boarded a connecting flight, Delta Flight 48 to Frankfurt, Germany. (First Amended

Complaint at ¶¶ 6-7.)

The Plaintiff alleges that while on one of the Defendants' flights, she developed a medical condition known as deep vein thrombosis ("DVT"), which she alleges caused her "serious and permanent bodily injuries". Although her injuries are not described specifically in the complaint, DVT is a condition in which blood clots form in the deep veins of the lower extremities. If the clots break, they can migrate to critical organs like the brain, heart, or lungs and cause strokes or similar conditions. See, e.g., Blansett v. Continental Airlines, Inc., 379 F.3d 177, 178 (5th Cir.), cert. denied, 125 S. Ct. 672 (2004). She alleges that the Defendants are liable for her injuries because they did not provide warnings as to the potential for DVT from sitting for long periods while on board extended flights, nor provide instructions on how to minimize the risks. (First Amended Complaint at ¶ 8.)

On August 10, 2004, the Plaintiff filed her original Complaint, which she amended on September 17, 2004. She seeks recovery for injuries relating to her alleged DVT. The Plaintiff brings this action pursuant to the Convention For the Unification of Certain Rules Relating to International Carriage, an international treaty commonly knows as the "Warsaw Convention". As to the signatory nations, the Warsaw Convention governs recovery for injuries caused by accidents occurring during international travel. The Plaintiff alleges that the conduct of the Defendants, particularly the lack of warning and advice regarding DVT, did not conform to industry standards, and therefore constitutes an "accident" for which she may recover under the Warsaw Convention. (First Amended Complaint at ¶¶ 4, 8.)[1]

---

[1] The Plaintiff's husband also asserts a claim for loss of consortium.

On September 27, 2004, the Defendants filed the current Motion To Dismiss the First Amended Complaint. They argue that the facts alleged in the complaint do not demonstrate that an "accident" occurred, as that term is used in the Warsaw Convention. Accordingly, the complaint does not state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  LAW

### A.  Standard For Dismissal

The Defendants have moved to dismiss because the First Amended Complaint allegedly fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the allegations in the complaint are taken as true and viewed in the light most favorable to the Plaintiff. A complaint will not be dismissed "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hiser v. City of Bowling Green, 42 F.3d 382, 383 (6th Cir. 1994), cert. denied, 514 U.S. 1120 (1995), quoting, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio, 900 F.2d 882, 885 (6th Cir. 1990). The complaint need only give fair notice as to the claim and the grounds upon which it rests. In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).

Conclusory allegations, however, are not sufficient to state a claim. Rather, a complaint must set forth specific facts which, if proven, would warrant the relief sought. Sisk v. Levings, 868 F.2d 159, 161 (5th Cir. 1989). In addition, a court is not bound to accept as true a legal conclusion couched as a factual allegation. Papasan v. Allain, 478 U.S. 265, 286 106 S. Ct. 2932, 2944 (1986). A court likewise need not accept unwarranted factual inferences. Morgan v. Church's Fried Chicken, 829

-3-

F.2d 10, 12 (6th Cir. 1987).

    B.  The Warsaw Convention

The Warsaw Convention provides the exclusive remedy for personal injuries suffered on board an international aircraft. El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 161, 176 (1999).  Article 17 of the Warsaw Convention provides:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any operation of embarking or disembarking.

Thus, a claim under the Warsaw Convention has three elements: (1) there has been an "accident", (2) the accident caused a passenger to suffer death or bodily injury, and (3) the accident occurred either on board the aircraft or in the course of operations of embarking or disembarking. Eastern Airlines, Inc. v. Floyd, 499 U.S. 530, 535-36 (1991).

As used in the Warsaw Convention, the term "accident" means "an unexpected or unusual event or happening that is external to the passenger."  The definition should be "flexibly applied" after assessing all circumstances surrounding the alleged injury.  However, an accident has not occurred when the alleged injury "indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft". Air France v. Saks, 470 U.S. 392, 405-06 (1985).

### III. ANALYSIS

Although the Sixth Circuit has not addressed the issue, two other circuits have recognized that the mere occurrence of DVT does not constitute an "accident" when the injury occurs on an aircraft that operates in the "usual, normal, and expected" manner.  See Rodriguez v. Ansett Australia, 383

F.3d 914, 917 (9th Cir. 2004); Blansett v. Continental Airlines, Inc., 379 F.3d 177, 179 (5th Cir.), cert. denied, 125 S. Ct. 672 (2004).  In this case, however, the alleged accident is *not* the mere occurrence of DVT.  Rather, the Plaintiff alleges that the accident is:

> the failure of defendants to conform their conduct to industry standards, medical standards and/or their own safety and operational policies by, among other things, failing to warn or advise Plaintiff Amelia Ann Baxley of the known risk that she and other passengers are subject to developing DVT or other pulmonary illnesses as a result of conditions aboard extended flights, or to advise and instruct her and her fellow passengers of ways to avoid developing DVT or other pulmonary illnesses in the course of extended air travel.

(First Amended Complaint at ¶ 8, see also ¶¶ 12 and 16.)  The Plaintiff asserts that the Defendants' departure from applicable standards constitutes an "unexpected or unusual event or happening" that falls within the definition of "accident" under the Warsaw convention.

The Plaintiff relies on Olympic Airways and Husain, 540 U.S. 644 (2004), in which a passenger requested a change of seating to be farther away from the smoking section.  He claimed that he had asthma and allergies that made cigarette smoke particularly harmful to him.   Although his seat was not actually within the smoking section, he was close enough that by a couple hours into the flight, the smoke had surrounded him.  Despite three requests for a seat change, flight attendants refused to help him find another seat.  While still in flight, he suffered an adverse reaction and later died.  Id. at 646-48.  The alleged "accident" was the flight attendants' refusal to adhere to his requests, made for medical reasons, for a seat change.

Applying Saks, the Supreme Court confirmed that an injury need not be caused by a single event constituting the "accident".  Rather, a plaintiff need only prove that "some link in the chain [of events] was an unusual or unexpected event external to the passenger."  Id. at 652, quoting, Saks, 470

-5-

U.S. at 406. The Supreme Court concluded that the refusal to aid the passenger after multiple requests was an unexpected and unusual external event that contributed to the death, and therefore constituted an "accident" for the purposes of the Warsaw Convention. Id. at 653-657.

The Plaintiff argues that under Husain, the Defendants' omission of DVT warnings and instructions constitutes the accident. The parties agree that in contrast to Husain, there was never any explicit refusal by the flight crew not to give the warnings or otherwise refuse needed aid. Their conduct was passive. Instead, the Plaintiff argues that the airline policy of not giving DVT warnings on international flights violates industry standards and, therefore, the policy constitutes an unexpected and unusual event in view of such standards. Because this motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), no discovery has been taken and all facts alleged in the First Amended Complaint must be viewed as true. The Court, therefore, assumes for now that an industry standard exists and was violated by the Defendants. Accordingly, the issue for the purposes of this motion is whether a violation of an industry standard under these circumstances can be an "accident" under the Warsaw Convention.

In Rodriguez, cited above, the Ninth Circuit stated that the plaintiff presented no evidence that an industry standard either existed or was violated at the time of the alleged accident. The court, therefore, avoided the precise issue presented before this Court: " We thus need not decide whether an airline's failure to warn of DVT can constitute an accident for the purposes of Article 17." Rodriguez, 383 F.3d at 919.

In Blansett, however, the Fifth Circuit addressed the precise issue before this Court. As here, the Fifth Circuit assumed for the purpose of ruling on a motion that the airline departed from an industry standard. Blansett, 379 F.3d at 181. The court, however, rejected a *per se* rule that violation of an

-6-

industry standard is an accident. Instead, the alleged violation must still be "unexpected and unusual". Thus, some departures from industry standards may be accidents, while others are not. Id. at 181-82.

The Blansett court noted that the alleged accident related to the sufficiency of in-flight warnings and safety instructions, which are enumerated by the Federal Aviation Administration ("FAA"). It is undisputed that the FAA does not require DVT warnings on any flights. In Witty v. Delta Air Lines, Inc., 366 F.3d 380 (5th Cir. 2004), the court held that because DVT warnings were not required by the FAA, an airline policy not to provide such warnings could not be the basis of a cause of action. The court in part was concerned with the potential for conflicting warnings. For example, a DVT warning might advise passengers to move about the cabin to improve blood flow, while other instructions might advise passengers that they are safer belted in their seats because of the dangers of unexpected turbulence. It is a task for the FAA, and not the courts, to formulate standards to accommodate such potentially conflicting warnings and instructions.

> We hold that the federal regulatory requirements for passenger safety warnings are exclusive and preempt all state standards and requirements. . . . Allowing courts and juries to decide under state law that warnings should be given in addition to those required by the Federal Aviation Administration would necessarily conflict with the federal regulations.

Witty, 366 F.3d at 385.

Witty was decided under state law because the flight at issue was domestic. In Blansett, the court determined that the same reasoning applies to international flights governed by the Warsaw Convention:

> Though *Witty* does not decide this case, because its lesson directly applies only to negligence causes of action, it is nonetheless instructive. It was not an unexpected or unusual decision for Continental merely to cleave to the exclusive

-7-

> list of warnings required of it by the agency that has regulatory jurisdiction over
> its flights.  Ultimately, no jury may be permitted to find that Continental's failure
> to warn of DVT constituted an "accident" under article 17. Continental's policy
> was far from unique in 2001 and was fully in accord with the expectations of
> the FAA. Its procedures were neither unexpected nor unusual.

Blansett, 379 F.3d at 182.[2]

Based on similar reasoning, other courts have held that there is no cause of action under the Warsaw Convention arising out of an airline policy not to provide DVT warnings.  Three such opinions were issued by the same judge in September 2003.  See Damon v. Air Pacific, 2003 WL 22494412 (C.D. Cal. September 8, 2003); Caman v. Continental Airlines, Inc., 2003 WL 22469915 (C.D. Cal. September 8, 2003); Blotteaux v. Qantas Airways Limited, 2003 WL 22341319 (C.D. Cal. September 5, 2003).   See also Louis v. British Airways, Ltd., 2003 WL 22769110 (D. Alaska November 17, 2003).

The Plaintiff relies on Miller v. Continental Airlines, Inc., 2003 WL 21557678 (N.D. Cal. July 1, 2003) for the proposition that this case should at least proceed to discovery.[3]  That decision was decided before Blansett, Witty, and the other district court cases cited above.  Upon comparing the analyses of the various cases, this Court agrees with the Blansett line of reasoning.  Under these

---

[2] The Plaintiff cites several cases for the general proposition that FAA regulations are minimum standards, and, therefore, compliance with them does not preclude recovery in all cases.  (See Plaintiff's Brief In Opposition at 10.)  Upon review of these cases, the Court concludes that they are inapplicable because none of them involve the federally-mandated in-flight warnings and instructions.

[3] Miller is a multi-district litigation ("MDL") of similar DVT claims brought against other airlines.  The Plaintiff has sought inclusion of this case in the MDL, but the Defendants have objected.  There has been no decision on whether this case should be transferred to the MDL.  On December 7, 2004, this Court denied the Plaintiff's motion to stay proceedings pending a final ruling on MDL jurisdiction.

circumstances, because the Defendants' in-flight warnings complied with the FAA regulations, the Defendants' conduct was not "unusual and unexpected".  Accordingly, there was not an accident pursuant to the Warsaw Convention.

### IV.  CONCLUSION

For the foregoing reasons, the Defendants' Motion To Dismiss (Docket No. 8) is GRANTED, and this action is hereby dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.


Issued: April 29, 2005              s/ John M. Manos
                                    UNITED STATES DISTRICT JUDGE